People of the State of Illinois, Plaintiff-Appellee, v. Robert Dade, Defendant-Appellant.

Gen. No. 52,705.

First District, Second Division.

April 15, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

Robert Dade was found guilty, following a bench trial, of the offense of sale of narcotic drugs. Judgment was entered on the finding and he was sentenced to a term of not less than ten, nor more than eleven years in the Illinois State Penitentiary. Defendant appeals on the ground that he was not proven guilty beyond a reasonable doubt.

On April 12, 1967, one Herbert Branch, alias Preston Dufauchard, a narcotics addict and police informer, was searched by Chicago police officers and found to be free of narcotics and money. He was given fifteen dollars in undusted, recorded currency by the officers for the purpose of participating in a controlled purchase of narcotics.

Branch testified that he had informed the police that he could purchase narcotics from a number of persons in the vicinity of 4300 South Prairie Avenue. He further testified that following his being searched and given the recorded money he was taken to the named area; that he sought out the defendant and found him in a pool hall; that after defendant agreed to sell narcotics to him, the accused took the money while they were in the pool hall; and that they left the poolroom together and walked around the corner to 4233 Prairie Avenue, where defendant had a room. Branch testified that the defendant asked him to wait outside and then entered the building alone, returning with the narcotics which he handed to the informer. He further testified that the pool hall was not crowded.

Three police officers testified. Officer Williams testified that after Branch left the police vehicle he, Williams, observed the informer as he entered the pool hall and then observed him leave the pool hall in the company of defendant and turn the corner at Forty-third Street and Prairie, at which point they were no longer in his view. Officer Nance testified that he remained in the police vehicle and that when the informer returned to the vehicle he gave Nance a tinfoil packet. (It was stipulated by the parties that this packet was the one which Officer Nance received from the informer, that it was delivered to the Chicago Crime Laboratory, where its contents were submitted to various chemical identity tests, the results of which showed the contents to be heroin.) Nance further testified that after receiving the packet he left the vehicle and joined the other officers pursuant to the arrest of defendant. On cross-examination Officer Nance testified that Branch was known as a special police employee; that he had given money to Branch: "I give him money for lunch and stuff like that," and that the pool hall was crowded when he entered to arrest the defendant.

Officer Arnold testified that he saw Branch and Dade exit the pool hall and walk to a building at 4233 Prairie which Dade entered while Branch waited outside; that Dade reappeared shortly thereafter and the two men began to walk back in the direction from which they had come, later separating, with Dade returning to the pool hall and Branch to the police vehicle. Officer Arnold testified on cross-examination that he had also given money to the informer and that the pool hall was crowded when he entered.

None of the officers saw what transpired in the pool hall after Branch entered, nor did they observe any exchange of narcotics between Branch and Dade. Following his arrest, the defendant's person and room were searched by the officers but no narcotics or recorded money were found. Dade had sixty-seven dollars in currency on his person at the time of his arrest. There was no "post sale" search of the informer.

Defendant took the stand on his own behalf and testified that he knew Branch and had "shot" narcotics with him on two occasions, the most recent being three days prior to his arrest. He further testified that the pool hall was crowded; that when Branch entered the pool hall he asked defendant if he could borrow a hypodermic needle and then proceeded to the rear of the poolroom. Upon his return the two left to procure the needle which Branch had requested. Dade explained that when Branch indicated that he would go along to secure the needle defendant asked him to remain outside because defendant did not want his landlady to suspect his use of narcotics and Branch had been there just three days previous at which time Branch and defendant "shot" narcotics together. Defendant denied selling narcotics to the informer or receiving money from him. He further testified that following his arrest Officer Arnold asked him to become an informer and told him that if he did so

340

there would be no need to worry about going to jail as defendant could remain out on the street and work with the police. On rebuttal the prosecution called Officer Williams, rather than Officer Arnold, to rebut defendant's testimony with respect to his being asked to become an informer.

Defendant asserts in this appeal that he was not proven guilty beyond a reasonable doubt because the conviction rests solely on the uncorroborated testimony of an addict-informer.

█ It is well established principle that the testimony of a narcotic addict is to be reviewed with great caution, since the fact of his addiction to narcotics has an important bearing on his credibility. People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955); People v. Hamby, 6 Ill2d 559, 129 NE2d 746 (1955); People v. Faulkner, 12 Ill2d 175, 145 NE2d 632 (1957), cert denied, 355 US 965 (1958); People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959); People v. Bazemore, 25 Ill2d 74, 182 NE2d 649 (1962).

█ In the present case the State concedes that there was no corroboration of the informer's testimony with respect to the actual sale, but argues that the surrounding circumstances lend credibility to it. We cannot agree with this contention. Here both the person and room of defendant were searched and no narcotics were found. Even more importantly, the search failed to reveal the recorded funds allegedly used for the purchase and the informer was not searched subsequent to the alleged sale. Furthermore, the testimony of the informer as to the number of people in the pool hall differed from that of the two police officers who were questioned on the subject; two police officers testified that they had paid the informer; it was shown that at the time of his testimony in this case there was a possession of narcotics charge pending against the informer in preliminary hearing

court which had been pending for a period in excess of four months. Further, he had "made" three cases for the police subsequent to his arrest on that charge.

We conclude that the uncorroborated testimony of Branch was not sufficient to prove defendant guilty beyond a reasonable doubt and that the surrounding circumstances serve more to detract from, rather than add to, his credibility. Therefore the judgment must be reversed.

Judgment reversed.

BURKE and McCORMICK, JJ., concur.